IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

MICHELLE DILLOW CARTER,

    Claimant,

v.                          CIVIL ACTION NO. 1:19-00191

ANDREW SAUL*,
Commissioner of Social Security,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

By Standing Order, this action was referred to United States Magistrate Judge Dwane L. Tinsley for submission of findings and recommendations regarding disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Tinsley submitted to the court his Proposed Findings and Recommendation ("PF&R") on January 2, 2020, in which he recommended that the district court deny claimant's request to reverse the Commissioner's final decision; grant defendant's request to affirm the final decision; affirm the final decision of the Commissioner; and dismiss this case and remove it from the court's docket.

**I.    Procedural Background**

Claimant Michelle Dillow Carter ("claimant"), filed her

---

\*    Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul, Commissioner of Social Security, has been added as a party. Nancy A. Berryhill's term expired on June 4, 2019, and she has been terminated as a party.

application for Title II benefits on April 6, 2015, alleging

disability since March 6, 2015, because of bipolar disorder,

depression, anxiety, severe mood disorders, endometriosis, and

migraines.  (Tr. at 103.)  Her claim was initially denied on

August 28, 2015, (Tr. at 133-37), and again upon reconsideration

on December 15, 2015.  (Tr. at 143-49.)  On April 16, 2015,

claimant filed a written request for hearing.  (Tr. at 29.)  An

administrative hearing was held on October 24, 2017 before the

Honorable David Read, Administrative Law Judge  ("ALJ").  (Tr.

at 70-102).  On December 22, 2017, the ALJ entered an

unfavorable decision.  (Tr. at 44-58.)  On February 23, 2018,

claimant sought review by the Appeals Council of the ALJ's

decision.  (Tr. at 206-07.)  The ALJ's decision became the final

decision of the Commissioner on March 1, 2019, when the Appeals

Council denied claimant's request.  (Tr. at 1-7.)

Claimant timely brought the present action on March 15,

2019, seeking judicial review of the administrative decision

pursuant to 42 U.S.C. § 405(g).  (ECF No. 1.)  The Commissioner

filed an Answer, (ECF No. 7), and a transcript of the

administrative proceedings.  (ECF No. 8.)  Claimant subsequently

filed her Brief in Support of Complaint, (ECF No. 11), and in

response, the Commissioner filed his Brief in Support of

Defendant's Decision. (ECF No. 13.)  Claimant then filed her

Response to Brief in Support of Defendant's Decision.  (ECF No.

14.)  Magistrate Judge Tinsley then submitted his PF&R, affirming the final decision of the Commissioner, on January 2, 2020.  (ECF No. 15.)

## II.  **Claimant's Objections to the PF&R**

In accordance with the provisions of 28 U.S.C. § 636(b), the parties were allotted fourteen days, plus three mailing days, in which to file any objections to Magistrate Judge Tinsley's PF&R.  The failure of any party to file such objections constitutes a waiver of such party's right to a *de novo* review by this court.  See Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989).

Claimant, by counsel, timely filed objections to the PF&R on January 31, 2020.  (ECF No. 18.)  Claimant makes five objections:  1) the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence; 2) the ALJ's determination of claimant's credibility was deficient; 3) the ALJ failed to properly evaluate medical opinion evidence, and his assessment of each opinion's weight is unsupported by substantial evidence; 4) the ALJ failed to consider the Vocational Expert's ("VE") assessment that an individual being off task for more than 15% of an eight-hour workday precluded employment; and 5) proper consideration of claimant's newly submitted evidence would likely have resulted in the issuance of a favorable decision for claimant.

3

Defendant timely responded to claimant's objections on February 21, 2020. (ECF No. 20.) In his response, defendant foremost argues that claimant's objections should be rejected because they reargue the same issues raised in her initial brief, and are not new arguments. Defendant then responds to each of claimant's five objections, countering that: 1) the ALJ had a substantial evidentiary basis for the RFC; 2) the ALJ readily acknowledged that claimant's physical and mental conditions significantly limited her work-related abilities and credited her complaints to the extent they enjoyed record support; 3) the court should defer to the ALJ's weighing of medical opinion evidence because the ALJ identified sufficient relevant evidence to support his conclusions on weighing evidence; 4) the ALJ is not required to address every piece of evidence, such as the Vocational Expert's ("VE") response to a hypothetical question, in making a conclusion; and 5) the new evidence submitted to the Appeals Council did not change the outcome of the ALJ's decision by making it unsupported by substantial evidence.

## III. **Applicable Standards of Review**

### a. **Standard of Review of Objections**

Pursuant to Fed. R. Civ. P. 72(b), the Court must "make a *de novo* determination upon the record . . . of any portion of the magistrate judge's disposition to which specific written

objection has been made." However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. See Thomas v. Arn, 474 U.S. 140, 149–50 (1985). *De novo* review is also not required "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47–48 (4th Cir. 1982); see also United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007) ("[T]o preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection."); McPherson v. Astrue, 605 F. Supp. 2d 744, 749 (S.D.W. Va. 2009) ("[F]ailure to file a specific objection constitutes a waiver of the right to *de novo* review.").

**b. Standard of Review of the Commissioner's Decision**

It is not the province of a federal court to make administrative disability decisions. Rather, *de novo* review of the PF&R in disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusions. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## IV. **Discussion**

### a. **Claimant's Objections Warrant** *De Novo* **Review**

Defendant contends that claimant's objections should be rejected because they reargue the same issues raised in her initial brief, and are not new arguments. In support of this proposition, he cites Nichols v. Commissioner of Social Security, which stated that "[a] mere restatement of the arguments raised in the summary judgment filings does not constitute an 'objection' for the purposes of district court review." 100 F. Supp. 3d 487, 497 (E.D. Va. 2015). While

several district courts in Virginia and South Carolina have followed this rule on occasion, this court declines to adopt it in this case.  Instead, this court finds the analysis in Howard v. Saul more persuasive.  See 408 F. Supp. 3d 721 (D.S.C. 2019).  There, the court declined to follow Nichols because "[t]he mere fact that Howard argued this issue to the Magistrate Judge, who rejected it, does not mean that he is precluded from objecting to her finding on that issue.  Such a procedural rule would have the confusing effect of encouraging parties not to argue disputed points of law in front of the Magistrate Judge . . . [and] would undermine the court's duty to undertake a de novo review."  Id. at 726–27.  Additionally, just as in Howard, here claimant has made specific objections to particular findings of the PF&R, based on relevant arguable points of law.  See id. at 726.  When a claimant states clear objections based on points of law, this court finds that it is the role of the district court to review these objections de novo.  See Mathews v. Weber, 423 U.S. 261, 270-71 (1976) (explaining the limited role of a magistrate judge is to propose recommendations that guide the district court's review of the record and the key legal arguments, and that "[t]he authority and the responsibility to make an informed, final determination . . . remains with the judge).

## b. Sequential Evaluation Process

An individual unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" is considered to be disabled and thus eligible for benefits. 42 U.S.C. § 423(d)(1)(A). The ALJ uses a five-step sequential process in evaluating disability claims. See 20 C.F.R. §§ 404.1520(a)-(g). If at any point of this process the ALJ determines conclusively that a claimant is or is not disabled, review does not proceed to the next step. Id. § 404.1520(a)(4). The five steps include evaluations of whether a claimant i) is working; ii) has a severe impairment; iii) has an impairment that meets or equals the impairments in Appendix 1 to Subpart P of the Administrative Regulations No. 4; iv) can return to her past relevant work; and v) if not, whether she can perform other work. See id. §§ 404.1520(a)-(g). "The ultimate burden to prove disability lies on the claimant." Preston v. Heckler, 769 F.2d 988, 990 (4th Cir. 1985); see Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012) ("To establish eligibility for . . . benefits, a claimant must show that he became disabled before his [date last insured].").

"If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual

functional capacity" ("RFC") before proceeding to the fourth step.  Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); see 20 C.F.R. §§ 404.1520(e), 416.920(e).  The claimant's RFC reflects "her ability to perform work despite her limitations." Patterson v. Comm'r, 846 F.3d 656, 659 (4th Cir. 2017); Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016) (defining claimant's RFC as "the most the claimant can still do despite physical and mental limitations that affect his ability to work" (alterations and internal quotation marks omitted)); see 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The ALJ "first identif[ies] the individual's functional limitations or restrictions and assess[es] his or her work-related abilities on a function-by-function basis," then "define[s] the claimant's RFC in terms of the exertional levels of work."  Lewis v. Berryhill, 858 F.3d 858, 862 (4th Cir. 2017).  "In determining a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments . . . including those not labeled severe" as well as "all the claimant's symptoms, including pain, and the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  Monroe, 826 F.3d at 179 (alterations and internal quotation marks omitted); see 20 C.F.R. §§ 404.1545(a), 416.945(a).

When the claimant alleges a mental impairment, the first three steps of the sequential evaluation process and the RFC assessment are conducted using a "special technique" to "evaluate the severity of [the] mental impairment[]." 20 C.F.R. §§ 404.1520a(a), 416.920a(a); see Patterson, 846 F.3d at 659. Considering the claimant's "pertinent symptoms, signs, and laboratory findings," the ALJ determines whether the claimant has "a medically determinable mental impairment(s)" and "rate[s] the degree of functional limitation resulting from the impairment(s)" according to certain criteria. 20 C.F.R. §§ 404.1520a(b), 416.920a(b); see id. §§ 404.1520a(c), 416.920a(c). "Next, the ALJ must determine if the mental impairment is severe, and if so, whether it qualifies as a listed impairment." Patterson, 846 F.3d at 659; see 20 C.F.R. §§ 404.1520a(d), 416.920a(d). "If the mental impairment is severe but is not a listed impairment, the ALJ must assess the claimant's RFC in light of how the impairment constrains the claimant's work abilities." Patterson, 846 F.3d at 659.

After assessing the claimant's RFC, the ALJ at the fourth step determines whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); Monroe, 826 F.3d at 180. If she does not, then "the ALJ proceeds to step five." Lewis, 858 F.3d at 862.

The fifth and final step requires the ALJ to consider the claimant's RFC, age, education, and work experience in order to determine whether she can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this point, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, A) that claimant, considering claimant's age, education, work experience, skills, and physical shortcomings, has the capacity to perform an alternative job, and B) that this alternative job exists in significant numbers in the national economy. Lewis, 858 F.3d at 862; McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Mascio, 780 F.3d at 635. If the claimant can perform other work, the ALJ will find her "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If she cannot perform other work, the ALJ will find her "disabled." Id.

**c. The ALJ's Conclusions**

Applying the sequential evaluation process in this case, the ALJ concluded that claimant satisfied the first step, as she had not engaged in substantial gainful activity since the alleged onset of her disability. (Tr. at 49-50.) He next found that claimant's right shoulder rotator cuff tendonitis, bipolar

11

disorder, depressive disorder, and anxiety disorder constituted "severe" impairments. (Tr. at 50.) However, he found that those physical and mental impairments, or a combination thereof, failed to meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 50–52.) Upon assessing claimant's RFC, the ALJ determined that claimant is able "to perform medium work . . . except [she] may frequently perform reaching with the right dominant upper extremity." (Tr. at 52.) The ALJ seemingly clarified this confusingly-stated RFC later in his formal decision by twice stating that the objective evidence supports a conclusion that claimant is capable of performing "medium exertion with reaching limitation." (Tr. at 53, 56.) The ALJ also noted in the RFC that claimant "is limited to occasional interaction with the public." (Tr. at 52.)

The ALJ concluded that given the limitations imposed by the claimant's RFC, she was unable to perform her past relevant work, satisfying the fourth step.[1] (Tr. at 57.) He noted that claimant is "a younger individual" with "at least a high school education" and that "[t]ransferability of job skills [was] not

---

[1] The VE testified that based on the hypothetical RFC given, claimant could perform her past work. (Tr. at 57, 100.) However, the ALJ determined that claimant's past relevant work involved a significant amount of interaction with the public, and thus found that claimant could not perform her past relevant work. (Tr. at 57.)

material to the determination of disability." (Tr. at 57.)

Because the ALJ determined that claimant was unable to perform the full range of medium work, he enlisted a VE to aid him in determining the extent to which claimant's limitations precluded her from working. (Tr. at 57.) Specifically, the ALJ asked the VE whether a hypothetical person of the same age, education, and work experience as claimant with the following functional capacities could perform work: "limited to medium work; also limited to frequent reaching with the right dominant arm; and limited to occasional interaction with the public." (Tr. at 100.) The VE then testified that, given these limitations, claimant is capable of working as a janitor, kitchen helper, or stock clerk. (Tr. at 57–58.) The VE further testified that there are approximately 1,140,000 of these suitable jobs existing nationally. (Tr. at 58.) As a result, the ALJ concluded that claimant did not meet the requirements of the fifth step and therefore was not "under a disability . . . from March 6, 2015, through the date of this decision." (Tr. at 58.)

### d. Analysis of Objection 1

The RFC, as stated in the ALJ's Notice of Decision, is that

"claimant has the residual functional capacity to
perform medium work . . . except may frequently
perform reaching with the right dominant upper
extremity. She is limited to occasional interaction
with the public."

(Tr. at 52.) Claimant objects that the RFC's findings as to her

13

physical impairments and her mental impairments are not
supported by substantial evidence.

### i. Physical Impairments and the RFC

Claimant argues that the RFC allowing frequent reaching
with the right arm is inconsistent with the ALJ's finding that
claimant suffers from "severe" right shoulder rotator cuff
tendinitis.  This argument fails.  A finding that an impairment
is "severe" means that the impairment "cause[s] more than
minimal limitations in the claimant's ability to perform basic
work activities," (Tr. at 50), and this finding is relevant at
step two of the sequential evaluation process.  See 42 U.S.C. §§
404.1520(a)-(g).  Finding that claimant suffers from a severe
impairment in her arm does not prohibit a determination at step
four that claimant is able to perform frequent reaching with
that same arm.  See, e.g., Lance v. Colvin, 2017 WL 677664, at
*2 (M.D. Fla. Feb. 21, 2017) (finding a "severe" impairment of
partial right arm paralysis at step ii while also finding in the
RFC that "claimant can frequently reach with the right dominant
arm"); Martinez v. Astrue, 2012 WL 3580675, at *6 (D.S.C. July
30, 2012) (finding a "severe" impairment of right shoulder
arthritis at step ii while also finding an RFC of "frequent
reaching in all directions").  Furthermore, "frequent reaching"
in an RFC context still signifies that an ALJ is instituting a
limitation upon the work that a claimant may perform, as

14

"frequent" is a limitation against jobs that would involve

"constant" reaching.  See DOT No. 311.472-010; see also Long v.

Astrue, 2012 WL 5471084, at *1 (C.D. Cal. Nov. 8, 2012) ("[A]n

activity is 'frequent' if it exists one-third to two-thirds of

the time, and it is 'constant' if it exists two-thirds or more

of the time.").  Thus, the ALJ's finding that claimant has

"severe" right shoulder rotator cuff tendinitis, (Tr. at 50), is

in fact fully consistent with the RFC's conclusion that claimant

may "frequently perform reaching with the right dominant upper

extremity," (Tr. at 52), which is also consistent with later

statements in the ALJ's decision that claimant is capable of

performing work requiring "medium exertion with reaching

limitation."  (Tr. at 53, 56.)

     Now, the question is whether these consistent

determinations regarding claimant's physical impairments are

supported by substantial evidence.  The court finds that they

are.  The ALJ, in concluding that claimant possessed the

strength to do medium work and was capable of frequent reaching

with her right arm, based this finding on substantial evidence

in the record.  The ALJ gave significant weight to the

assessment by Dr. Nutter, which stated that claimant's range of

motion was only slightly diminished and that her strength was

normal.  (Tr. at 53.)  The ALJ then pointed to additional

medical examinations that showed claimant's range of motion as

either normal or limited, (Tr. at 53), and that she

"demonstrated fair strength" in her arm.  The ALJ also noted

that claimant complained of pain in her right shoulder, but only

sought out treatment six months after her injury, and claimant

was not interested in surgery.  (Tr. at 53).  The ALJ therefore

concluded that in light of these facts, "her symptoms must be

fairly well controlled" with the conservative treatment of

physical therapy.[2]  (Tr. at 53).  While the ALJ repeated that

"claimant's right shoulder tendinitis is severe," he followed

that by explaining how the objective evidence and the success of

the conservative physical therapy treatment demonstrated that

claimant is able to perform medium work with a reaching

limitation.  (Tr. at 56.)

The RFC assessment "must include a narrative discussion

describing how the evidence supports each conclusion, citing

specific medical facts . . . and nonmedical evidence."  Ladda v.

Berryhill, 749 F. App'x 166, 172 (4th Cir. 2018) (quoting SSR

96-8p (July 2, 1996)).  Here, the ALJ reviewed the medical

evidence related to claimant's right shoulder as well as her

statements about her symptoms, and weighed the evidence

accordingly.  The ALJ determined that claimant suffered only

---

[2] The ALJ also noted that the medical evidence indicated some
improvement in the condition of claimant's shoulder following
physical therapy.  (Tr. at 53.)

limited range of motion impairment and retained normal strength. The ALJ's RFC finding that claimant possessed the strength to do medium work and the ability to frequently reach with her right arm is, therefore, supported by substantial evidence.

### ii. Mental Impairments and the RFC

Claimant objects that the ALJ did not properly evaluate her mental impairments in constructing the RFC. Specifically, claimant argues that the ALJ did not state a specific basis as to why the RFC reflected a limitation of occasional interaction with the public and no other limitations tied to claimant's mental impairments. This argument also fails, as the ALJ extensively reviewed claimant's medical records, medical opinion evidence, and claimant's own activities in support of his RFC determination.

The ALJ first summarized claimant's mental health treatment records. He noted the repeated reports in claimant's mental health records that her mental status examinations were largely normal: Dr. Webb stated that claimant's "mental status examinations were essentially normal"; Ms. Jennings "found the claimant's immediate, recent, and remote memories were all within normal . . . [and] did not indicate limitation in social functioning"[3]; Dr. Robertson found claimant's "intellectual

---

[3] The ALJ stated he gave "significant weight" to this assessment. (Tr. at 54.)

functioning was average . . . [and there were] no problems with memory or concentration"; Ms. Herman noted "no problems with memory or concentration" and that "claimant's depression appeared to be only mild to moderate"; even following claimant's reports of increased mental symptoms, Dr. Robertson again found in both 2016 and in 2017 that claimant's "mental status examinations were consistently normal"; and Dr. Steward stated "claimant's intellectual functioning was above average [and] her memory and concentration were within normal."  (Tr. at 53-55.) The ALJ next highlighted how the fact claimant prepared simple meals, followed instructions and paid bills, shopped online, cleaned her home, and travelled on vacations demonstrated that her activities were "not markedly limited."  (Tr. at 55.)

Then, addressing the medical opinion evidence, the ALJ summarized the opinions of Dr. Robertson, Ms. Autrey, and Ms. Wyrick – that claimant had mild limitations in managing herself, moderate limitations in understanding and in memory, and extreme limitations in interacting with others and in concentration. But the ALJ explained he gave "only partial weight" to these opinions because they "are not consistent with treatment records and psychological testing which consistently indicate good memory, good concentration, and that [claimant] interacted well with others."  (Tr. at 55.)  As to the opinion of Dr. Steward that claimant was totally disabled and her prognosis appeared

poor, the ALJ stated he gave "little weight" to this conclusion because the opinion contained minimal objective evidence, evidence which on the contrary showed above average intelligence, good ability to concentration [sic], and no significant deficits in memory." (Tr. at 56.) And the ALJ also gave "little weight" to the evaluations of the state agency psychological consultants, Dr. Bickham and Dr. Richard,[4] because "there [is] no objective evidence to support th[at] Claimant is limited to simple work," as she "exhibited no significant limitations," "reported she is able to follow instructions," and the ALJ stated he "observed no difficulties with concentration" at the hearing. (Tr. at 56.) Lastly, the ALJ considered claimant's testimony as to her mental impairments, but gave her testimony regarding the "intensity, persistence and limiting effects of [her] symptoms" little weight because he found it to be "not entirely consistent" with the medical evidence. (Tr. at 52). However, the ALJ did took account of claimant's testimony that she "lost her job [because] her behavior had changed" and that she was unable to "get along well with others" at work, as this testimony substantially supports the RFC provision limiting claimant's interaction with the public. (Tr. at 52.)

---

[4] Dr. Bickham and Dr. Richard opined that claimant was limited to simple work and limited, superficial contact with others. (Tr. at 56.)

The ALJ appears to have given far more weight to the medical record evidence than he gave to the medical opinion evidence in crafting the RFC. The ALJ is entitled to do so, and substantiated his decision by explaining each time why he gave only partial or limited weight to the opinion evidence. See Dunn v. Colvin, 607 F. App'x 264, 267 (4th Cir. 2015) ("[A]n ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has failed to give a sufficient reason for the weight afforded a particular opinion"); Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) ("if a physician's opinion is not supported by clinical evidence . . . it should be accorded significantly less weight"). The ALJ explained that "[r]estricting the claimant to performing the range of work described [in the RFC] adequately addressed the location, duration, frequency and intensity" of her mental impairments. (Tr. at 55.) Thus, following the recitation of the medical records, the opinion evidence, and claimant's own activities, the ALJ considered all that evidence in concluding that claimant retained the capacity to perform medium work activities with the limitation of occasional interaction with the public.

Claimant may not agree with the ALJ's conclusion or how he weighed the evidence before him. However, the ALJ is entitled

to weigh the evidence before him.  See Dunn, 607 F. App'x at 267; Craig, 76 F.3d at 590; see also id. at 589 ("In reviewing for substantial evidence, [the court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ].").  Moreover, it is clear that the ALJ met his burden by properly considering the evidence in the record, weighing that evidence, and using that weighted evidence as the basis for the RFC.  The RFC stating that claimant's mental impairments warranted a limitation of occasional interaction with the public, and no additional limitations, was therefore supported by substantial evidence.  Claimant's first objection is **OVERRULED.**

### e. Analysis of Objection 2

Claimant next objects that the ALJ's determination of claimant's credibility was deficient because it did not identify with specificity the evidence which supported his determination. In his decision, the ALJ summarized claimant's testimony regarding her impairments and their effects, but explained that he discounted claimant's testimony because her statements were "not entirely consistent with the medical evidence and other evidence in the record."  (Tr. at 52.)  The ALJ then wrote that the "objective findings do not corroborate the allegations to the disabling extent as asserted by the claimant,"  (Tr. at 53), before spending several pages recounting the objective medical

findings and opinion evidence given by physicians examining and
treating claimant.  (Tr. at 53-56.)  The ALJ concluded by
stating that "[i]n summary, [Claimant's] subjective complaints
and alleged limitations are not fully persuasive and the record
as a whole establishes that she retains the capacity to perform
work activities with limitations as set forth [in the RFC
assessment]."  (Tr. at 56.)

As part of the RFC assessment, the ALJ must evaluate a
claimant's "statements and symptoms regarding the limitations
caused by her impairments." Linares v. Colvin, 2015 WL 4389533,
at *5 (W.D.N.C. July 17, 2015) (citing 20 C.F.R. §§ 404.1529,
416.929; Craig, 76 F.3d at 593-96).  A claimant's symptoms "must
be supported by objective medical evidence showing the existence
of a medical impairment which could reasonably be expected to
produce the [symptoms], in the amount and degree, alleged by the
claimant." Johnson, 434 F.3d at 657 (quoting Craig, 76 F.3d at
591).  There is no requirement that the ALJ reference or analyze
how claimant's testimony compares to every individual item of
objective medical evidence; instead, the ALJ must simply "assess
whether the claimant's subjective symptom statements are
consistent with the record as a whole." Vass v. Berryhill, 2018
WL 4737236, at *6 n.4 (W.D. Va. June 12, 2018), adopted by 2018
WL 4704058 (W.D. Va. Sept. 30, 2018).  "When considering whether
an ALJ's credibility determinations are supported by substantial

evidence, the Court does not replace its own credibility assessments for those of the ALJ; rather, the Court studies the evidence to determine if it is sufficient to support the ALJ's conclusions." Coleman v. Colvin, 2015 WL 764023, at *15 (S.D.W. Va. Feb. 23, 2015). Here, the ALJ satisfied this requirement in his decision and RFC finding, as he thoroughly reviewed claimant's subjective symptom statements in light of the objective medical evidence. The ALJ's decision to give little weight to claimant's own testimony due to contradictory objective medical evidence is, therefore, supported by substantial evidence. Claimant's second objection is **OVERRULED**.

### f. Analysis of Objection 3

Claimant's third objection is that the ALJ failed to properly evaluate medical opinion evidence pursuant to 20 C.F.R. § 404.1527, and that his assessment of each opinion's weight is unsupported by substantial evidence. 20 C.F.R. § 404.1527 guides the evaluation of medical opinion evidence by giving six factors an ALJ should consider in deciding how much weight to give to any medical opinion: 1) whether the medical opinion of a source has personally examined claimant; 2) the length and frequency of the source's examinations of claimant; 3) the quantity of relevant evidence supporting the source's opinion; 4) the consistency of the source's opinion with the record as a whole; 5) whether the source is specialized in the area relevant

to the medical opinion given; and 6) other factors which tend to support or contradict the medical opinion.  20 C.F.R. §§ 404.1527(c)(1)-(6).  Additionally, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."  Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (quoting Craig, 76 F.3d at 590).  But "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."  Id. (citing 20 C.F.R. § 416.927); see also Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996) ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").  "If . . . medical opinions conflict internally with each other or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved."  20 C.F.R. §§ 404.1527(c)(2)-(6),(e), 416.927(c)(2)-(6),(e).  An ALJ's determination "as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication

that the ALJ has dredged up 'specious inconsistencies' . . . or has failed to give a sufficient reason for the weight afforded a particular opinion." Dunn v. Colvin, 607 F. App'x 264, 267 (4th Cir. 2015) (internal citations omitted).

Claimant objects to the weights given to the medical opinions of Dr. Nutter, Ms. Jennings, Dr. Robertson and Ms. Autrey, Dr. Steward, Drs. Binder and Withrow, and Drs. Bickham and Richard. Upon review, the court finds that the ALJ properly considered each opinion, gave each a weight based upon whether the opinion was supported by the objective medical record, and explained in each case why he gave the opinion the weight he did. An opinion-by-opinion analysis of the ALJ's weight determinations demonstrates that the ALJ's conclusions here are supported by substantial evidence.

The ALJ first reviewed the opinion of Dr. Nutter. (Tr. at 53). The ALJ summarized Dr. Nutter's opinion, finding normal muscle strength and only a slight decrease in range of motion. (Tr. at 53.) The ALJ gave this opinion "significant weight" because it "is supported by the objective findings," such as claimant's ability "to write and pick up coins without difficulty." (Tr. at 53.) Following this weighing of Dr. Nutter's opinion, the ALJ next summarized the medical tests and reports by Drs. Southers and Crews (finding that claimant had fair strength with limited but improving range of motion

following physical therapy). (Tr. at 53.) The reports by Drs. Southers and Crews can thus also be understood as part of the "objective findings" the ALJ referred to in giving "significant weight" to Dr. Nutter's opinion. (Tr. at 53.)

The ALJ next gave the assessment by Ms. Jennings, that claimant did not indicate limitation in social functioning, "significant weight" because it was "supported by mental status examination." (Tr. at 54.) The ALJ stated this weight and rationale after describing the psychological evaluation Ms. Jennings performed, which in relevant part found no problems with claimant's memory and concentration. (Tr. at 54.) Ms. Jennings did indicate that claimant appeared manic, anxious, and emotional. (Tr. at 54, 471.) However, this was but a part of Ms. Jennings' findings, as Ms. Jennings also noted in her mental status examination of claimant that claimant was appropriately dressed, had a cooperative attitude, displayed correct social judgment, and reported no delusional or obsessive/compulsive behaviors. (Tr. at 471.) Claimant's argument essentially amounts to a disagreement with the way the ALJ resolved conflicts in the evidence, which is the exclusive province of the ALJ. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."). Here, the evidence contained in Ms. Jennings' mental status examination and

referred to by the ALJ is sufficient to find that substantial evidence supports the ALJ's decision how to weigh Ms. Jennings' assessment.

Dr. Robertson and Ms. Autrey opined that claimant satisfied three mental impairment listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. (See Tr. at 641-44.)  As to these opinions by Dr. Robertson and Ms. Autrey, the ALJ gave these "only partial weight . . . [because] they are not consistent with treatment records and psychological testing which consistently indicate good memory, good concentration, and that she interacted well with others . . . [and] she is able to follow instructions." (Tr. at 55.)  In making this determination, the ALJ cited multiple medical records[5] and had summarized these and other medical records in the preceding paragraphs of his decision which documented that claimant's "intellectual functioning was above average", she had "no problems with memory or concentration," "she related well," her "depression appeared to be only mild to moderate," had "consistently normal" mental status examinations, she said "she was in a good place and doing better," and took several vacations with her family.  (Tr. at 54-55).  Therefore, there is clearly substantial evidence supporting the ALJ's decision to give little weight to Dr.

---

[5] Exhibits 4F, 5F, 6E, 10F, 12F, 15F, 16F, and 23F.  (Tr. at 55.)

Robertson and Ms. Autrey's opinions.  Moreover, in any event,

Dr. Robertson and Ms. Autrey's opinions relating to the Listings

are not entitled to controlling weight because whether an

individual's impairment meets or is equivalent in severity to

the requirements of any Listing is an opinion on an issue

reserved to the ALJ.  See Coleman v. Colvin, 2015 WL 764023, at

*17 (S.D.W. Va. Feb. 23, 2015).

The ALJ's decision to give little weight to Dr. Steward's

opinion that claimant was "permanently and totally disabled,"

(Tr. at 56), is likewise supported both by law and by

substantial evidence.  The ALJ explained that he discounted Dr.

Steward's opinion because, in part, Dr. Steward "lack[ed]

program knowledge" and because his report included "minimal

objective evidence."  (Tr. at 56).  The ALJ properly discounted

the opinion because "program knowledge" is a factor that the ALJ

may consider when evaluating opinion evidence.  See Ahmad v.

Berryhill, 2019 WL 1233854, at *11 (E.D. Va. Mar. 15, 2019).

And again, medical opinions that encroach on issues reserved to

the ALJ – such as the ultimate determination of disability – are

not entitled to significant weight.  See, e.g., Coleman, 2015 WL

764023, at *18.  Additionally, the ALJ pointed to specific

evidence contradictory to Dr. Steward's conclusion, stating that

Dr. Steward's opinion is "inconsistent with the objective

testing, which showed above average intelligence, good ability

to hold concentration, and no significant deficits in memory."[6]
(Tr. at 56.)  Therefore, there is substantial evidence
supporting the ALJ's decision to give little weight to Dr.
Steward's opinion.[7]

Lastly on the opinion evidence front, the ALJ gave "partial
weight" to the opinions of state agency medical consultants Dr.
Binder and Dr. Withrow, who opined that claimant had no physical
impairments that rose to a severe level and, correspondingly,
that she had no exertional or non-exertional physical
limitations.  (Tr. at 56.)  The ALJ's determination to give
partial weight to the opinions is supported by substantial

---

[6] See also previously discussed medical records documenting that
claimant's "intellectual functioning was above average", she had
"no problems with memory or concentration," "she related well,"
her "depression appeared to be only mild to moderate," had
"consistently normal" mental status examinations, she said "she
was in a good place and doing better," and took several
vacations with her family.  (Tr. at 54-55).

[7] The portion of the ALJ's rationale where he discounted Dr.
Steward's opinion because it included only "minimal objective
evidence" is not supported by substantial evidence.  The ALJ
gave no explanation of why he concluded that Dr. Steward's
testing contained minimal objective evidence.  On the contrary,
Dr. Steward appeared to base his findings on objective
psychiatric testing.  (See Tr. at 562-69.)  Additionally, the
new interrogatories by Dr. Robertson and Ms. Autrey support that
Dr. Steward's testing methods provide the "most objective
evidence possible in psychiatry."  (Tr. at 12-13.)  However, the
ALJ's other reasons for giving only little weight to Dr.
Steward's opinion remain supported by substantial evidence. See
supra.  Therefore, the conclusion remains that there is
substantial evidence supporting the ALJ's decision to give
little weight to Dr. Steward's opinion, and thus it shall be
affirmed.  42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

evidence given the ALJ's previous documentation of claimant's limited range of motion, pain, and tenderness in her right shoulder, which shows that there is some physical impairment that would create a RFC limitation. (Tr. at 52-53). In any case, claimant appears to object that the ALJ rejected these opinions "simply . . . because [the ALJ] believes they are contrary to his own observations." (ECF No. 18, at 15). This objection is odd because it objects to a finding the ALJ made in claimant's favor. The court need not consider this objection any further, as "[a]n ALJ's error is harmless when it does not substantively prejudice the claimant." Mascio v. Colvin, 780 F.3d 632, 639 (4th Cir. 2015).

This court in Coleman explained the court's role in reviewing ALJ evaluation of medical opinion evidence when it stated:

> [O]pinions on issues reserved to the Commissioner, such as whether a claimant is unemployable or unable to work, are not entitled to controlling weight. Similarly, opinions of treating physicians that are not well-supported by diagnostic and clinical findings, or are inconsistent with other substantial evidence, are not entitled to controlling weight. Instead, these opinions are assessed in relation to the record as a whole to determine their consistency and supportability. When there are inconsistencies in the record, the ALJ is charged with the duty of resolving the conflicts. If the ALJ completes this task in accordance with the applicable rules and regulations, and the ultimate finding is supported by evidence which a reasoning mind would accept as sufficient, the Court may not substitute its judgment for that of the ALJ.

2015 WL 764023, at *18.  Here, the ALJ's decisions on the weight
to give medical opinion evidence follow this prescribed
approach.  A review of the ALJ's decision substantiates that the
ALJ meticulously reviewed the evidence, including both the
objective medical reports and the opinions of Dr. Nutter, Ms.
Jennings, Dr. Robertson and Ms. Autrey, Dr. Steward, and Dr.
Binder and Dr. Withrow, and identified conflicts or conformities
between each of those opinions and the rest of claimant's
medical record.  Therefore, having concluded that the opinions
of Dr. Robertson and Ms. Autrey, Dr. Steward, and Dr. Binder and
Dr. Withrow on the extent of claimant's impairments or her
disability were incompatible with the objective clinical
findings, the ALJ exercised his right to give little weight to
these opinions, and to give greater weight to the opinions of
Dr. Nutter and Ms. Jennings.  In sum, the ALJ's weighing of the
opinion evidence was supported by substantial evidence because
the ALJ explained why, based on the overall medical record, he
gave more or less weight to the challenged opinions.  Claimant's
third objection is **OVERRULED**.

    **g. Analysis of Objection 4**

    Claimant objects that the ALJ failed to properly consider
the VE's assessment.  During claimant's hearing, the ALJ posed
two hypotheticals to the VE.  (Tr. at 100-01.)  The ALJ first

asked the VE whether a hypothetical individual with the same age, education, and work experience as claimant, and who also is limited to medium work, limited to frequent reaching with the right dominant arm, and limited to occasional interaction with the public – claimant's RFC – could perform claimant's past work as a billing clerk and secretary. (Tr. at 100.) The VE responded that yes, someone with that functional capacity could perform the past work.[8] (Tr. at 100.) The ALJ also asked the VE if there was work (other than claimant's past work) that was available in the national economy and capable of being performed by someone with the hypothetical functional capacity. (Tr. at 100.) The VE testified that such a hypothetical person could work as a janitor, kitchen helper, or stock clerk, and that approximately 1,140,000 of these jobs exist nationally. (Tr. at 100-01.) Claimant objects that this hypothetical is flawed because of the ALJ's "grossly inadequate" RFC. (ECF No. 18, at

---

[8] Generally, a finding that claimant could perform her past work would bar an overall finding of disability. See 20 C.F.R. §§ 404.1520(a)-(g). However, here the ALJ explained that he disagreed with the VE's assessment because he found that claimant's past work demanded a "significant amount of interaction with the public," (Tr. at 57), while the VE testified that the past work required only "occasional" interaction with the public. (Tr. at 100.) Claimant does not object to the ALJ's decision to disagree with the VE and find that claimant was not able to perform her past work. The ALJ heard claimant testify regarding her past work. (Tr. at 76-80, 93-97.) Based on that testimony, substantial evidence exists for the ALJ to find that claimant's past work required substantial interaction with the public.

15.)  However, this objection to the RFC has previously been dealt with and overruled.

Claimant's primary objection regarding the VE testimony involves the second hypothetical the ALJ posed to the VE.  The second hypothetical asked the VE whether "if the individual had the same limitations as the first hypothetical, but would be off task for more than 15 percent of the time in an eight-hour workday," would that individual be able to do claimant's past work or other work in the national economy.  (Tr. at 101.)  The VE answered that such a hypothetical individual would not be able to work.  (Tr. at 101.)  In his decision, the ALJ never discussed this hypothetical or the VE's response.

Claimant objects to this failure to consider the VE's testimony on this point, and the failure to consider claimant's previous employer's questionnaire which indicated that claimant's productivity "was 70% of that of other employees." (Tr. at 244-45.)  However, the ALJ made no error in declining to consider these points, as an ALJ need not rely on VE testimony that relates to impairments the ALJ determines to be "not severe or not credible."  See McPherson v. Astrue, 605 F. Supp. 2d 744, 761 (S.D.W. Va. 2009); see also Woodlief v. Berryhill, 2017 WL 9478528, at *5 (E.D.N.C. Aug. 4, 2017) ("An ALJ is permitted to ask a VE multiple hypotheticals . . . and it is entirely permissible for the ALJ to determine after the hearing which

hypothetical is supported by the record.").  Moreover, an ALJ is "not required to specifically discuss and analyze every piece of evidence in the case in [his] narrative opinion[] so long as it is possible for the reviewing court to realize that all relevant evidence was considered, though not written about, in reaching the ultimate decision."  Marshall v. Astrue, 2013 WL 1194764, at *4 (D.S.C. Mar. 21, 2013) (quoting Mellon v. Astrue, 2009 WL 2777653, at *13 (D.S.C. Aug. 31, 2009)).  Therefore, if substantial evidence supports the ALJ's determination that the second hypothetical included a limitation not supported by the record considered as a whole, then the ALJ committed no error by not specifically discussing either the VE's answer to the second hypothetical in his decision or the former employer's responses to the questionnaire.

Here, such substantial evidence exists.  Being off task primarily reflects upon concentration ability, and being underproductive primarily reflects upon intelligence and concentration ability.  The ALJ discussed claimant's medical records involving her concentration ability and her intelligence, highlighting multiple treating physicians who documented no problems with claimant's concentration or intelligence.[9]  Furthermore, these findings – discussed by the

_____

[9] To reiterate, the ALJ discussed the following pieces of medical evidence in his decision:  Dr. Robertson found claimant's

ALJ at length in his decision – are consistent with claimant's
former employer's other responses to the questionnaire:
claimant "complete[s] all the usual duties required for [her]
position," is "able to complete all of [her] job duties without
special assistance," and "complete[s] [her] work in the same
amount of time as [other] employee[s] in similar positions."
(Tr. at 244.)  Therefore, substantial evidence exists that the
ALJ determined that the second hypothetical included a
limitation not supported by the record considered as a whole,
and claimant's fourth objection is **OVERRULED**.

### h. Analysis of Objection 5

Claimant's fifth and final objection is that proper
consideration of claimant's newly submitted evidence would
likely have resulted in the issuance of a favorable decision for
claimant.  Claimant submitted new evidence to the Appeals
Council, evidence that contained additional interrogatory
answers from Dr. Robertson and Ms. Autrey, (Tr. at 11-13), and

---

"intellectual functioning was average" and found "no problems
with memory or concentration"; Ms. Herman noted "no problems
with memory or concentration"; Dr. Steward stated "claimant's
intellectual functioning was above average [and] her memory and
concentration were within normal"; and claimant was able to
complete serial 3's and 7's and spell the word "world" forward
and backwards during Ms. Jennings' examination.  (Tr. at 53-55.)
additionally, the ALJ stated he himself "observed no
difficulties with [claimant's] concentration" at the hearing.
(Tr. at 56.)

updated physical therapy records related to claimant's right
shoulder rotator cuff tendonitis.[10]   (Tr. at 15-41, 65-69.)

     In situations of new evidence, this court considers newly
submitted evidence reviewed by the Appeals Council, and then
again reviews the ALJ's decision for substantial evidence as it
would do when no new evidence is submitted to the Appeals
Council.  See Meyer v. Astrue, 662 F.3d 700, 707 (4th Cir.
2011); Wilkins v. Sec'y, Dep't of Health & Human Servs., 953
F.2d 93, 96 (4th Cir. 1991) (en banc)).  The court "focus[es] on
determining whether [the] new evidence is contradictory,
presents material competing testimony, or calls into doubt any
decision grounded in the prior medical reports."  Flesher v.
Colvin, 2016 WL 1271511, at *9 (S.D.W. Va. Mar. 31, 2016).
Remand is appropriate only if the newly submitted evidence

---

[10] The Appeals Council declined to consider the majority of the
newly submitted physical therapy evidence, (Tr. at 15-41),
because it was dated after the ALJ's decision.  (Tr. at 2.)
Indeed, the records claimant cites, which date from January 8,
2018, until March 2, 2018, have no bearing on whether claimant
was disabled prior to the ALJ's December 22, 2017 decision.  See
Reichard v. Barnhart, 285 F. Supp. 2d 728, 733 (S.D.W. Va. 2003)
("[E]vidence must be considered if it has any bearing upon
whether the Claimant was disabled during the relevant period of
time"); Verimlyea v. Berryhill, 2019 WL 456238, at *2 (M.D.N.C.
Feb. 5, 2019) ("[T]he relevant inquiry is if the contents of the
proffered evidence concern the period on or before the ALJ's
decision.").  Claimant's progress in physical therapy — or lack
thereof — after the ALJ's decision cannot, therefore, affect
this court's review of the ALJ's decision.

     The court will consider the physical therapy records dated
October 9, 2017 to October 11, 2017.  (Tr. at 65-69.)

"impugn[s] the integrity of the [ALJ's] decision." Meyer v. Colvin, 754 F.3d 251, 257 (4th Cir. 2014).

The new interrogatories from Dr. Robertson and Ms. Autrey contain responses to questions directed at refuting the ALJ's evaluations of Dr. Steward's opinions and Ms. Jennings's examination findings. (Tr. at 11-13). In their responses, Dr. Robertson and Ms. Autrey: explain that claimant going on vacations should not itself be evidence that claimant does not suffer significant mental impairments; restate their opinions that claimant has "extreme" impairments in social functioning, in concentrating, and in memory; restate their opinion that claimant suffers more than mild side effects from her medications; affirm Dr. Steward's opinions and diagnoses; explain that Dr. Steward's testing actually provides the "most objective evidence possible in psychiatry"; and affirm Ms. Jennings' findings and state they believe her findings are consistent with those of Dr. Steward. (Tr. at 11-13.)

Unfortunately for claimant, the vast majority of these additional interrogatory responses "do[] not undermine the substantial evidence supporting the ALJ's decision." Kiser v. Colvin, 2016 WL 884690, at *3 (W.D.N.C. Mar. 8, 2016). This is because their responses – excluding their answer relating to claimant's vacations - are simply intended to change how the ALJ would weigh their own opinions and Dr. Steward's and Ms.

Jennings' opinions.  Yet the ALJ has, with the support of

substantial evidence, explained his reasons for the weight he

accorded to their opinions and findings.  <u>See supra</u> Part IV.f.

The fact that Dr. Robertson and Ms. Autrey have reiterated their

opinions in their interrogatory or have vouched for the opinions

of other physicians does not change the fact that substantial

evidence supported the ALJ's weighing determinations.  Perhaps

this could be the case if the ALJ had originally given their

opinions less weight because he found the opinions to be unclear

or unsupported by other medical opinions – but that was not the

case here.  Instead, the ALJ discounted these medical opinions

because he found them inconsistent with treating physician

observations and the objective medical record.[11]  <u>See supra</u> Part

IV.f.  Therefore, because this new evidence does not impugn the

---

[11]  However, more discussion is warranted to properly consider
the interrogatory response that Dr. Steward's testing actually
provides the "most objective evidence possible in psychiatry."
(Tr. at 12-13.)  The ALJ explained that he gave the opinion of
Dr. Steward little weight, in part because he deemed that the
opinion was supported by only "minimal objective evidence."
(Tr. at 56.)  Due to the new evidence contained in Dr. Robertson
and Ms. Autrey's interrogatory, (Tr. at 12-13), this court found
that this portion of the ALJ's rationale was not supported by
substantial evidence.  <u>See supra</u> n.8.  However, as mentioned
herein, the ALJ's other reasons for giving only little weight to
Dr. Steward's opinion are supported by substantial evidence, and
therefore the court concluded that there remained, in aggregate,
substantial evidence supporting the ALJ's decision to give
little weight to Dr. Steward's opinion.  Therefore, this new
evidence likewise does not change the outcome of the ALJ's
decision.

integrity of the ALJ's decisions how to weigh the medical opinion evidence, the court finds this new evidence would not change the outcome of the ALJ's decision.

The response in the interrogatories relating to claimant's vacations requires a different analysis, however.  Nonetheless, the conclusion remains the same:  though the new evidence could reasonably cause the ALJ to no longer view claimant's vacations as evidence that her mental impairments were not nearly as severe as she self-reported, this was but one factor among many that led the ALJ to conclude that claimant did not suffer severe mental impairments.  For example, the ALJ also highlighted other activities claimant herself took that demonstrated that her activities were "not markedly limited":  claimant prepared simple meals, followed instructions and paid bills, shopped online, and cleaned her home.  (Tr. at 55).  Additionally, the ALJ noted that claimant's "intellectual functioning was above average", she had "no problems with memory or concentration," "she related well," her "depression appeared to be only mild to moderate," had "consistently normal" mental status examinations, and claimant herself said "she was in a good place and doing better."  (Tr. at 54-55).  Therefore, even assuming that the ALJ would have accepted the new interrogatory response's direction of how to interpret claimant's vacations, substantial evidence still supports the ALJ's decision to not include a mental

limitation in the RFC other than limiting claimant to occasional interaction with the public.  See supra Part IV.d.ii.  For this and the foregoing reasons, claimant's fifth objection is **OVERRULED**.

## V.    Conclusion

The court has reviewed Magistrate Judge Tinsley's Proposed Findings and Recommendation, claimant's five objections to the PF&R, defendant's brief in support of the ALJ's decision, and the pertinent portions of the administrative record.  In so doing, the court has made a *de novo* determination of those issues within the PF&R to which claimant objected.  The court finds that there is substantial evidence in the record to support the ALJ's decision as to each of the objected issues.

Based upon the foregoing, the court adopts the Findings and Recommendations of Magistrate Judge Tinsley as follows:

1.    Claimant's request for reversal of the final decision is **DENIED**;

2.    Defendant's request to affirm the final decision of the ALJ is **GRANTED**;

3.    The final decision of the ALJ is **AFFIRMED**;

4.    The case is **DISMISSED**; and

5.    The Clerk is directed to remove the case from the court's docket.

The Clerk is directed to forward a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

**IT IS SO ORDERED** this 30th of March, 2020.

ENTER:

David A. Faber
Senior United States District Judge